IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TERRY S. EVERSOLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. 3:11CV00428 |
| FORD MOTOR COMPANY ) | |
| ) | |
| and ) | |
| ) | |
| CATERPILLAR, INC., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO FORD MOTOR COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND**

I.  **Statement of Facts.**

Each defendant in this matter has filed a Motion for Summary Judgment. Each addresses only two claims: violation of the Federal Magnuson-Moss Warranty Act and violation of the Virginia Motor Vehicle Warranty Enforcement Act ("Lemon Law"). Plaintiff's response to Caterpillar's Motion for Summary Judgment was timely and raises issues related to both motions, as does this response to Ford Motor Company's motion.

Plaintiff's Complaint, filed in state court and removed to this Court by Defendant Caterpillar, clearly indicates, in the first paragraph, that the action is one for:

breach of express and implied warranties <u>and</u> violations of the federal Magnuson-Moss Warranty Act <u>and</u> for violations of the Virginia Motor Vehicle Warranty Enforcement At ("Lemon Law"), all pursuant to the sale to Plaintiff of a defective, significantly impaired, unsafe, and unrepaired truck. *Emphasis added.*

"Pleadings must be construed so as to do justice." *Fed R. Civ. Pro.* 8 (e). Therefore, should this Court grant each defendant's Motion for Summary Judgment as to each count argued, the claim that express and implied warranties were breached remains. If the federal Court requires a separate count for the breach of warranty claim, Plaintiff requests permission to amend his Complaint.

In making a determination regarding each Motion for Summary Judgment on the Magnuson-Moss Warranty Act count, the Court must determine whether the Ford F-650 truck is a "consumer product" under that Act ("MMWA"), using the proper standard, which is the Federal Trade Commission's rule defining the products covered under the Act, found at 16 C.F.R. §700.1(a):

> [A] product is a "consumer product" if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by an individual is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.

Neither defendant acknowledged the FTC's rule in its Motion for Summary Judgment.

Electronically attached to this Memorandum are Ford's "SVE Bulletin Q-140," relating to "Model years 2004 and later F650 and F750 <u>to be used in a light to moderate duty cycle such as a recreational vehicle or a bus,</u>" Attachment 1, emphasis in original, and photographs of Ford F-650's "upfitted" as passenger vehicles, Attachment 2, which would be covered by both the Magnuson-Moss Warranty Act and the Virginia Motor Vehicle Warranty Enforcement Act ("Lemon Law"), 15 U.S.C. §§ 2301 *et seq.*, Va. Code §§ 59.1-207.9 *et seq.*.

## II. Statement of Genuine Issues/ Disputed Material Facts

A. Whether the Ford F-650 is a "consumer product" for purposes of the MMWA is a question of material fact genuinely in dispute.

While Defendant Ford claims that the F-650 is "commonly purchased and used for business and commercial use" (MSJ page 2), and supports that statement with an affidavit, Attachment 5 (Exhibit D) to Ford's Motion for Summary Judgment, that statement does not address the actual, determinative finding. Saying that commercial use is "common" is not the same as saying that personal or household use is "uncommon," according to 16 C.F.R. §700.1(a). The fact that Ford would distribute instructions on how to prepare these trucks for personal, recreational use establishes that Ford anticipates such use, and it can be presumed that Ford Motor Company would not publish this information if the use was so uncommon as not to warrant that effort. See Attachment 1.

The affidavit does nothing to dispel that impression; Mr. Keady avers that the F-650 is "commonly purchased and used for business and commercial use." He does not state that it is uncommon to use it for personal or household use; therefore, Ford has not met its burden to establish that the F-650 is not covered by the MMWA.

Much of Ford's statement of "Undisputed Facts" relates to the Plaintiff's deposition testimony, showing evidence of intent to use the truck in his business after two years, Memorandum in Support of Its Motion for Summary Judgment (Ford's Memorandum), p. 3. The last sentence of the Introduction section of Ford's Memorandum states that "Plaintiff did not use the truck in substantial part for personal, family, or household purposes." That statement is controverted by the deposition testimony. Only Mr. Eversole would know how he has used this truck, and he testified

that this truck is "just personal," Pl. Dep., p. 15, ll. 8-9. This truck has always been kept at his house rather than his garage, so he can leave in it easily, Pl. Dep., p. 19, ll. 1-18. He used it to tow his personal cars when he took this truck in for repair, so he would have a drive home. Pl. Dep., p. 75, ll. 18-23. That is personal use.

Further, it is uncontroverted that Plaintiff insured this vehicle for personal use, unlike his other, commercial trucks. See Attachment 3.

It is uncontroverted that Plaintiff registered this truck with the Department of Motor Vehicles for "private" use, rather than registering it "for hire," as his other trucks are registered. See Attachment 4, vehicle registrations, and Attachment 5, the Department of Motor Vehicle's distinction between "private use" tow trucks, which are used not for compensation, and "for-hire" tow trucks. Plaintiff owns a towing company. He likes tow trucks. He registers the trucks he uses in his business as "for-hire" trucks and the one he does not use in his business as "private."

B. **Whether the Ford F-650 is a "motor vehicle" for purposes of the Lemon Law is a question of material fact genuinely in dispute.**

See discussion below regarding the ambiguities in the definitions and the emphasis on the use of the particular vehicle to determine whether the Lemon Law applies to this particular vehicle. Plaintiff testified that he had the tow bed installed on this truck before he intended to use it for commercial purposes because the truck needs a bed to have a smooth ride. Pl. Dep., p.41, ll.10-25 (Attachment 6). He responded to defendants' questions that the truck has never been used for towing services, but that he has towed his personal vehicles with it to have transportation home from the repair shop. Pl. Dep., p.75, ll.12-25 (Attachment 6). He calls this truck one of his "play toys." See

Pl. Dep., p.80, ll.10-21 (Attachment 6). He states that he has never made money using this truck (paraphrasing). Pl. Dep., p.83, ll.19-21 (Attachment 6). He enjoys driving "big stuff." Pl. Dep., p.99, ll.20-24 (Attachment 6). He is not claiming any business losses because he does not have any. Pl. Dep., p.131, ll.10-20 (Attachment 6).

C.  Whether Plaintiff is a "consumer" for purposes of the Lemon Law is a question of material fact genuinely in dispute.

See discussion below. Plaintiff is a "consumer" for purposes of the law if he is the purchaser, other than for purposes of resale, of a motor vehicle used in substantial part for personal, family, or household purposes. Va. Code §59.1-207.11. Plaintiff purchased the truck, and there is no evidence of Plaintiff's intent to resell the truck. All of his testimony supports the finding that he has only used the truck for personal purposes. The Lemon Law only requires "substantial" personal use. Some business use is permitted, but here there is no evidence of business use at all. The law does not refer to the manner in which the vehicle is titled or treated for tax purposes. Plaintiff's insuring the truck on his personal policy, registering it as private rather than for-hire, and swearing that he has not used it for any business towing demonstrates that this vehicle has only been used for personal purposes.

### III. Argument Regarding MMWA

Ford goes to some length to itemize the titling, tax deductions, other personal vehicles owned by the Plaintiff (Ford's Memorandum pp. 3, 4), but those facts about this truck are not dispositive. The genuine issue remains whether it is not uncommon for an F-650 to be used as a personal vehicle. Here is the distinction between the MMWA and Virginia's Lemon Law: Mr. Eversole could buy a passenger car and use it only as a taxicab. That use would eliminate the coverage of the Lemon Law.

5

But Mr. Eversole's use, titling, or tax depreciation of this vehicle has no effect on the determination as to whether it is covered by the MMWA. The MMWA does not make a distinction based on a consumer's use of a product. It focuses on the product itself. Ford's Memorandum acknowledges that at page 6. So Mr. Eversole could buy that passenger car to use as a taxicab, and it would be covered under the MMWA as a type of vehicle that is considered a "consumer product." Similarly, if it is "not uncommon" for the Ford F-650 to be used for personal use or if it is unclear whether it is a "consumer product," any ambiguity should be resolved in favor of coverage. 16 C.F.R. §700.1(a).

Mr. Eversole is clearly a "consumer" under MMWA, as he purchased the truck not for resale, if the truck is a "consumer product." See 15 U.S.C. § 2301. That is the question.

Ford's Memorandum. Page 6, states that "Courts have repeatedly held that trucks, including those smaller than Plaintiff's F-650, are not 'consumer products.'" But Ford does not mention one case actually about an F-650. Ford implicates that size matters, but of course that is not true. A recreational vehicle or motor home that may be over 40 feet long and weigh more than the F-650 is clearly a "consumer product." The F-650 is peculiarly suited to be "upfitted" to be a personal recreational vehicle, as Ford's instructions attest. See Attachment 1, and Ford F-650's "upfitted" as passenger vehicles, Attachment 2. It is Ford's burden of proof on a Motion for Summary Judgment to establish that no genuine issue of material fact exists, and could do that by showing that Plaintiff cannot establish an element of his cause of action. But Ford has not alleged that it is "uncommon" for the Ford F-650 to be used for personal, family, or household purposes. Plaintiff submits that there is sufficient evidence to suggest that it is not uncommon for the Ford F-650 to be used for personal, family, or household purposes, so the Motion for Summary Judgment on this count should fail.

### IV. Argument Regarding Lemon Law.

It is interesting that throughout Ford's Memorandum, Ford uses the simple term "truck" for this vehicle. If this vehicle is a "truck" as defined by Virginia Code 46.2-100, which Ford admits it is at page 9 of Ford's Memorandum, then the use of the word "truck" in the Lemon Law would seem to indicate that it is covered by the Lemon Law. This analysis is one of statutory construction.

As Ford says, the Lemon Law applies to motor vehicles. "Motor vehicle" is defined in the law:

> "Motor vehicle" means only passenger cars, pickup or panel trucks, motorcycles, self-propelled motorized chassis of motor homes and mopeds as those terms are defined in §46.2-100 and demonstrators or leased vehicles with which a warranty was issued.

Plaintiff's counsel questioned the applicability of the Lemon Law to this vehicle when she filed the case; she read the definitions in both sections and verified the weight of the truck. But even though I spent nine years drafting and editing legislation for the Senate of the State of Texas, and have been handling Lemon Law cases in Virginia since 2003, I was certain that I was reading those provisions correctly. The problem is a lack of punctuation, which has decided many cases. Here, each phrase that is used in the definition of "Motor vehicle" in the Lemon Law should have been in quotation marks. When a prudent reader reads "self-propelled chassis of motor homes and mopeds as those terms are defined" in another section, she goes to that section and looks for that phrase. Not finding it, a person would look for subsets of a phrase. "Moped" is defined in § 46.2-100; "home" is not, but "motor home" is. So an ordinary reader cannot tell which parts of an unpunctuated phrase is a part of a defined term and which part is merely adjectival. By Ford's interpretation, a "foreign vehicle," because not named as a defined term in the definition of "Motor vehicle," would not be subject to the

7

Lemon Law. The law would not apply to a "'foreign market vehicle" as defined in § 46.2-100, which would limit Virginians' ability to sue manufacturers of vehicles assembled in other countries. Both of those constructions strain credulity. Clearly, a "foreign vehicle" could also be a "passenger car," and thus come under the Lemon Law, if used as a personal vehicle. A Ford F-650 could be a "passenger car" if upfitted as one, or a "self-propelled motorized chassis of [a] motor home[s]," if sold without a bed, as this one was.

The fact that Ford did not raise this defense earlier also supports Plaintiffs' proposal that the statute is ambiguous. This case was filed June 7, 2011, and answered by Ford on June 30, 2011, which answer included affirmative defenses. There was no defense that the vehicle was not a "motor vehicle" under the Lemon Law until this Motion for Summary Judgment.

Ford's argument requires any reader of this remedial statute to read the Lemon Law, then read § 46.2-100, cross-check which definitions appear and do not appear, and know to look for "pickup or panel truck" rather than just "truck."

In fact, none of the terms in the definition of "Motor vehicle" in the Lemon Law is defined in § 46.2-100. "Passenger cars" is not defined; "passenger car" is. It would have been easy to make the definitions singular and use quotation marks, and thus track precisely the language in § 46.2-100: "Motor vehicle" means only a "passenger car," "pickup or panel truck,". . .self-propelled motorized chassis of a "motor home," and a "moped," as those terms are defined . . ., but the General Assembly did not do that. Without quotation marks, "pickup or panel truck" could mean a pickup or panel "truck," as defined in § 46.2-100, which would include the F-650, as Ford acknowledges, MSJ page 10. Because the F-650 can be a pickup truck, or a passenger car, or a recreational vehicle, depending

8

on how the consumer upfits it, the interpretation of the Lemon Law should be resolved in favor of a consumer who purchases it for personal use.

Another approach to the statutory construction problem is to look at the surrounding language. Reading the definition of "Consumer" clarifies that the emphasis is on the <u>use</u> of the vehicle, and that it was important to the General Assembly to be protecting the ultimate consumer, not someone purchasing for resale. It is undisputed that Plaintiff did not purchase this truck for resale. The truck has been "used in substantial part for personal, family, or household purposes," so Plaintiff is a "consumer" for the purposes of the Lemon Law if the truck is a motor vehicle under the law. That is the material fact genuinely in dispute.

Plaintiff asks that the Motion for Summary Judgment be denied.

                                         Respectfully submitted,

                                         TERRY S. EVERSOLE

                                         By:   /s/ Patty Anderson
                                                        Counsel

Patricia Michels Anderson (VSB 65220)
Patty Anderson, Attorney
5905 W. Broad St., Suite 303
Richmond, VA 23230
804.282.7900
804.673.7900 (fax)
panderson@theconsumerlawgroup.com

CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2012, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W.F. Drewry Gallalee (VSB No. 20561)
Harold E. Johnson (VSB No. 65591)
Williams Mullen
A Professional Corporation
200 South 10th Street
P. O. Box 1320
Richmond, VA 23218-1320
Phone: 804.420.6000
Fax: 804.420.6507
dgallalee@williamsmullen.com
hjohnson@williamsmullen.com
*Counsel for Caterpillar, Inc.*

William Demarest, Esquire
Goodman Allen & Filetti
4501 Highwoods Parkway
Suite 210
Glen Allen, VA 23060
wdemarest@goodmanallen.com
CAllen@goodmanallen.com
Fax: 804.346.5954
*Counsel for Ford Motor Company*

/s/ Patty Anderson
Patricia Michels Anderson (VSB 65220)
Patty Anderson, Attorney
5905 W. Broad St., Suite 303
Richmond, VA 23230
panderson@theconsumerlawgroup.com
804.282.7900
804.673.7900 (fax)