## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

TERRY S. EVERSOLE,         )
                                  )
    Plaintiff,              )
                                  )
    v.                    )       Case No. 3:11cv428-DJN
                                  )
FORD MOTOR CO., et al.,     )
                                  )
    Defendants.          )
                                  )

## MEMORANDUM OPINION

In 2009, Terry S. Eversole ("Eversole" or the "Plaintiff") purchased a Ford F650 Series truck which he then retrofitted as a flat-bed tow-truck — allegedly to provide a "smoother ride." (Dep. of Terry S. Eversole ("Eversole Dep.") at 41:22-25, ECF No. 24-1.) He immediately experienced a series of mechanical malfunctions with the truck and it has been repaired pursuant to its warranty several times. Because of the mechanical malfunctions, Eversole brought *this* action asserting two counts under state and federal consumer protection statutes. Count one alleges that Defendants Ford Motor Company ("Ford") and Caterpillar, Inc. ("Caterpillar" or collectively with Ford, the "Defendants") have violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 through 2312. Count two asserts a claim against Ford alone for violation of Virginia's Motor Vehicle Warranty Enforcement Act ("Lemon Law"), Va. Code §§ 59.1-207.9 through 59.1-207.16:1. The parties have engaged in extensive discovery and the Defendants have moved for summary judgment on both counts.[1]

---

[1] The Court asserts jurisdiction over this matter by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Moreover, subject matter jurisdiction is proper under 15 U.S.C. § 2310(d), which allows a federal court to exercise jurisdiction in MMWA claims where the amount in

The dispositive issues in this case concern the character of the truck at issue. Regarding Count 1, the issue is whether the truck constitutes a "consumer product" within the scope of the MMWA. The issue with Count 2 is whether the truck is a "motor vehicle" covered by Virginia's Lemon Law. Although not identified as a separate count, Eversole also argues that his Complaint alleges a general breach of warranty claim pursuant to Virginia's Uniform Commercial Code ("UCC").

The Defendants' motions for summary judgment have been briefed by the parties[2] and the Court has reviewed all of the relevant submissions. Because the issues raised by the two motions overlap considerably, the Court will address the motions together. The Court has dispensed with oral argument, finding that it will not materially aid in the decisional process. Eversole has not established that a genuine issue of material fact exists with regard to either of his consumer protection claims. And, other than a bald allegation, he has not offered any evidence in support of a breach of warranty claim. Accordingly, the Court concludes that summary judgment is appropriate and will GRANT the Defendants' motions.

## I. BACKGROUND

When opposing a properly asserted motion for summary judgment, the non-moving party bears the burden of offering evidence to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In doing so, both the Federal Rules of Civil Procedure and this Court's Local Rules impose the added burden of

---

controversy exceeds $50,000. The Court exercises supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).
   [2] The Plaintiff failed to timely respond to Ford's Motion for Summary Judgment, but the Court granted him leave to file a late response. (ECF No. 33.) At the same time, the Court instructed that it would rule without the aid of any reply brief from Ford if doing so would yield a result favorable to Ford. (*Id.*) The goal was to avoid any unnecessary costs to the Defendants due to Plaintiff's delay.

identifying such evidence with particularity.  Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R.

56(B); *Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011)

(interpreting the 2011 amendments to Rule 56(c)).  In opposing Caterpillar's motion, Eversole

did not separately identify the facts in dispute or cite with particularity to those portions of the

record that would support the existence of a genuine dispute of material fact.  And although his

response to Ford's motion included a separately captioned section entitled "Statement of

Genuine Issues/Disputed Material Facts," that section consists almost entirely of argument.

Nevertheless, the Court endeavors to construe those facts in the light most favorable to Eversole

as the non-moving party, including consideration of those facts that he appears to dispute.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Viewing the evidence through such a

lens, the following narrative constitutes the facts for purposes of resolving the Defendants'

motions for summary judgment.

>    1.    **Eversole's Purchase of the Ford F650 Truck**

On December 8, 2009, Eversole purchased a new 2008 Ford F650 series diesel truck (the

"Truck") with a registered gross vehicle weight of 25,999 pounds from a Ford dealership in

Daytona, Florida.  (Eversole Dep. at 36:1-15, 37:18-38:4; Def. Ford Motor Co.'s Mem. Sup.

Mot. Sum. J. ("Ford Mem.") Ex. B, ECF No. 27-3.)  The registered owner on the bill of sale is

"Steve's Towing & Repair," one of several businesses that Eversole operates.  (Eversole Dep. at

9:21-10:2; Def. Caterpillar, Inc.'s Mem. Sup. Mot. Sum. J. ("Caterpillar's Mem.") Ex. C.)

Consistent with the bill of sale, the Truck is registered with the Virginia Department of Motor

Vehicles in the name of "Terry Steven Eversole d/b/a Steve's Towing & Repair."  (Eversole

Dep. at 43:4-11.)  Shortly after purchasing the Truck, Eversole installed a "roll-back wrecker

bed" on it, thereby converting it into a flat-bed tow truck.  (*Id.* at 38:17-39:21.)  His stated

intention was to use the Truck personally for two years and then to transition the Truck into the towing fleet of his business.[3]  (*Id.* at 97:18-21.)

Although details are lacking from the record, Eversole experienced a series of malfunctions with the Truck since its purchase.  First, on his return from purchasing the Truck in Florida, it broke down in Columbia, South Carolina.  (Eversole Dep. at 47:8-16.)  It was then towed to Charlotte, North Carolina, where it was repaired within a day.  (*Id.* at 47:16-22.)  Upon his return home, the Truck again broke down while Eversole drove it onto his driveway.  (*Id.* at 47:22-23.)  He has also experienced a series of transmission problems with the Truck since its purchase, though he has never attempted to have the transmission repaired.  (*Id.* at 109:1-14.)

Eversole does not allege any damages to his business as a result of any defect in the Truck or its engine.  (*Id.* at 131:10-20.)  Instead, he claims that he has suffered damages due to the "delay and the expense of traveling to repair facilities."  (Caterpillar Interrog. Nos. 7, 15.)  Indeed, Eversole concedes that he has never been required to pay for any engine repairs, all of which have been fully covered by the warranty provided by the engine's manufacturer — Caterpillar.  (Eversole Dep. at 144:7-17.)

### 2.     Commercial Character of the Ford F650 Truck

Eversole agrees with Ford's affiant, Christopher Keady, that "a Ford 650 [is] a type of truck that's typically used for commercial use," and that it is "normally a type of truck that would be used in the tow[ing] business."  (*Compare Id.* at 31:14-17, 38:2-4 *with* Aff. of Christopher M. Keady ("Keady Aff.") at ¶ 2, ECF No. 27-5.)  Consistent with this fact, Eversole

---

[3] As the Court shall explain further, *infra* at Section III(A), Eversole's subjective intentions are irrelevant.  Nevertheless, the Court notes his intentions because the parties have discussed them at length.

has deducted the depreciated value of the Truck as a business expense on his 2009 and 2010 federal income tax returns. (Pl.'s Resp. Def. Caterpillar's Interrog. No. 14, ECF No. 24-2.)

Both Ford and Eversole have also submitted printed portions of several webpages advertising Ford's F650 line of trucks.[4] According to Ford's own website, the F650 is part of its "commercial" line of trucks that "appeal[s] to businesses and municipalities." (Caterpillar's Mem. Ex. E, ECF. No. 24-5.) These trucks are specifically designed to be "upfitted" in a variety of ways, including the manner in which Eversole has converted his Truck into a flat-bed tow-truck. (*Id.*) Also apparently from Ford's website, Eversole has submitted an informational document from Ford regarding "Wheelbase Modifications – F650/750." This document appears to instruct "Recreational Vehicles and Bus Builders (and builders of similar duty cycle applications)" on engineering considerations when "upfitting" F650 trucks into buses or recreational vehicles. (Pl.'s Mem. Opp'n Ford's Mot. Sum. J. ("Pl.'s Ford Opp'n") Ex. 1, ECF No. 32-1.)

As an example of such consumer "upfitted" uses, Eversole submits what appears to be the printed website of a company known as "Supertruck." This document contains a series of photographs of F650 trucks that have been converted into limousines or sport utility vehicles. (Pl.'s Ford Opp'n Ex. 2, ECF No. 32-2.) This document contains no explanation of the trucks or Ford's intended market, instead directing customers to telephone the company and "ask for

---

[4] Generally, "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citations omitted); *see also Francisco v. Verizon South, Inc.*, 756 F. Supp. 2d 705, 713 (E.D. Va. 2010). Eversole has failed to object to such submissions as required by Fed. R. Civ. P. 56(c)(2). The Defendants also have not objected, presumably because of this Court's instructions in granting Eversole's Motion for an Extension. (Memorandum Order at ¶¶ 2-4, ECF No. 33.) Even accepting the webpage print-outs and viewing them in the light most favorable to Eversole, he cannot survive summary judgment. Accordingly, the Court will accept those documents into the record to address summary judgment.

owners Chris or George" — apparently the owners of "Supertruck," who can "upfit" an F650 into the types of vehicles depicted on the webpage. (*Id.*)

### 3.     Procedural Background

Eversole brought this action in the Circuit Court for the County of Henrico, Virginia, alleging two counts.  Count one asserts claims against both Defendants for breach of express and implied warranties under the MMWA, 15 U.S.C. §§ 2301 through 2312.  Count two asserts a claim against Defendant Ford for violation of Virginia's Lemon Law, Va. Code §§ 59.1-207.9 through 59.1-207.16:1.  The parties have completed discovery and both Defendants have separately moved for summary judgment, arguing that neither statutory claim is available due to the commercial character of the Truck.  Eversole responds that the Truck is covered by both acts and, even if not, it should be permitted to pursue a general claim for breach of express and implied warranties.[5]

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient

---

[5] Although the Complaint references the existence of an "express warranty for the engine of this vehicle," no written warranty to that effect has been made part of the record on summary judgment. Indeed, Eversole testified that he signed such a warranty disclaimer when he bought the Truck, even though he did not read the disclaimer or the written warranty. (Eversole Dep. at 110:9-24.)  When this case was removed from state court, Defendant Caterpillar appended its "Motion Craving Oyer" as part of the state court pleadings. (ECF No. 1-2.)  In Virginia procedure, a motion craving oyer allows a party to demand production of a document referenced in a pleading, thus incorporating that document into the pleading itself. *See, e.g., Wards Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 518 (Va. 1997).  Despite Caterpillar's Motion Craving Oyer, no written warranty appears in the record before this Court.

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita*, 475 U.S. at 586-87. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247-48; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises only when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

As the non-movant, Eversole has a duty to offer *evidence* establishing a triable issue and to cite to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R. 56(B); *see also Campbell*, 812 F. Supp. 2d at 759 n.5. He has failed to meet this burden. In fact, Eversole has offered no affidavit of his own or testimony of any kind to establish the consumer character of the Truck. He relies instead on a vague series of webpage print-outs to establish that, pursuant to applicable regulations, "consumer" applications of Ford's F650 line of trucks are "not uncommon." 16 C.F.R. § 700.1(a). These documents do nothing to establish consumer uses as "not uncommon," because they contain absolutely no evidence of how common such uses may be. And so, Eversole has not met his burden on summary judgment.

Eversole also cannot maintain his claim under Virginia's Lemon Law because the registered gross weight of the Truck exceeds 7,500 pounds. This is a bright-line requirement that his Truck cannot satisfy.

Finally, Eversole cannot add new claims or request leave to do so by passing reference in his brief — he must do so by making a properly supported motion pursuant to Fed. R. Civ. P. 15. But even if such claims were before properly before the Court, Eversole would be required to offer evidence that creates a genuine dispute of material fact to survive summary judgment. He

fails to do this, and so his passing request to add a UCC breach of warranty claim fails to defeat summary judgment.

## A.    Magnuson-Moss Warranty Act

Count 1 alleges that both Defendants violated the MMWA due to the defective condition of the Truck. To qualify under the Act, the Truck must be a "consumer product," as that term is defined by the statute and applicable regulations. "[T]he MMWA defines the term 'consumer product,' in relevant part, as 'any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . .'" *Shonk v. Fountain Power Boats*, 338 Fed. App'x 282, 287 (4th Cir. 2009) (quoting 15 U.S.C. § 2301(1)). To satisfy the definition, Eversole relies on 16 C.F.R. § 700.1(a), which defines the term as follows:

> [A] product is a "consumer product" if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by an individual is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.

According to this definition, Eversole can defeat summary judgment by offering evidence that it is "not uncommon" for Ford 650 trucks to be used "for personal, family, or household purposes." *Id.* Eversole's own use of the Truck is therefore irrelevant.

The parties agree that Eversole's subjective purpose for purchasing the truck is irrelevant. *See* 16 C.F.R. § 700.1(a) ("[T]he use to which a product is put by an individual is not determinative"); *see also Crume v. Ford Motor Co.*, 653 P.2d 564, 567 (Ore. App. 1982) (occasionally transporting groceries in a flatbed truck does not transform it into a consumer product). As the nonmoving party, Eversole has a burden to offer more than a mere "scintilla of

evidence" concerning the common uses of the Truck at issue in the consumer marketplace. *Lewis*, 409 F. Supp. 2d at 704 (citations omitted). He has failed to make any such showing.

To determine the "normal" use of a product, courts may employ a common sense understanding of the product. *See Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 998 (D. Minn. 2006) (concluding that SAT preparation materials do not resemble the consumer products listed in the Federal Register or the legislative history of the Act); *Clark v. Jim Walter Homes, Inc.*, 719 F. Supp. 1037, 1043 (M.D. Ala. 1989) (concluding that a prefabricated home resembles real property excluded from the definition of "consumer products" under the Act). Courts have also considered the manufacturer's description of the product, how it is advertised, and the purpose for which it is designed. *See, e.g., People ex rel. Mota v. Central Sprinkler Corp.*, 174 F. Supp. 2d 824, 829-30 (C.D. Ill. 2001); *Essex Ins. Co. v. Blount, Inc.*, 72 F. Supp. 2d 722, 723 (E.D. Tex. 1999).

In his deposition, Eversole explicitly admitted that Ford F650 trucks are "a type of truck that's typically used for commercial use." (Eversole Dep. at 38:2-4.) While Eversole might not be an expert in the marketplace for Ford F650 trucks, his testimony is consistent with the statement offered by Ford's Motor Vehicle Specialist, Christopher Keady. Keady has explained that this type of truck "is commonly purchased and used for business and commercial use" and that it "is marketed through Ford's Commercial Truck Division." (Keady Aff. at ¶ 3.) These statements from Keady and Eversole constitute at least some evidence that "personal, family, or household" uses of Ford F650s are uncommon. It is incumbent upon Eversole to offer evidence that the opposite is true.

Attempting to offer such contrary evidence, Eversole relies exclusively on two documents. First, he offers what appears to be engineering guidance offered to "builders" who

convert Ford F650s into buses or recreational vehicles. (Pl.'s Ford Opp'n Ex. 1.) That document contains absolutely no information about how common (or uncommon) such uses might be. Moreover, it is directed to "builders" of other types of vehicles — not consumers. It does not define "buses" or "recreational vehicles" so as to allow analysis of those end-products under the applicable statutes and regulations. Thus, the document does not address the key issue of how common a consumer use of Ford F650s might be.

The second document offered by Eversole is a print-out of the webpage maintained by a company called "Supertruck." (Pl.'s Ford Opp'n Ex. 2.) This document contains a series of photographs that appear to be Ford F650s that have been converted into sport utility vehicles, followed by an advertisement for the company and a statement encouraging customers to contact "owners Chris or George." This document is even more problematic to the Court, because it does not even appear to be maintained by either Defendant. Its relevance and admissibility is therefore questionable.[6] Even assuming that the document is admissible, the Court cannot decipher anything from it regarding the common uses of Ford F650s in the marketplace.

While the case law on MMWA claims is not well-developed in this jurisdiction,[7] another district court in the Fourth Circuit has granted summary judgment under remarkably similar circumstances to those in this case. In *Frederick v. Ford Motor Co.*, No. JFM-08-2380, 2009 U.S. Dist. LEXIS 44072 (D. Md. May 22, 2009), the court granted summary judgment, because

---

[6] *See* note 4, *supra*.

[7] Despite the relative paucity of cases applying the MMWA, both the Defendants and this Court have found a number of cases in which trucks similar to the Ford F650 were not covered by the Act. *Ruelas v. Freightliner, LLC*, No. S-07-581, 2008 U.S. Dist. LEXIS 15135, at *16 (E.D. Cal. Feb. 27, 2008) (tractor-trailer); *Kwiatkowski v. Volvo Trucks N. Am., Inc.*, 500 F. Supp. 2d 875, 877 (N.D. Ill. 2007) (tractor-trailer); *Platinum Towing Serv. v. Freightliner, LLC*, 06-C-1077, 2007 U.S. Dist. LEXIS 38012 (E.D. Wis. May 11, 2007) (tow-truck); *Frank v. Allstate Auto Sales*, No. 60530, 1992 Ohio App. LEXIS 2295 (April 30, 1992) (tow-truck); *Crume*, 653 P.2d at 567 (flatbed truck). Plaintiff has not identified a single case in which a commercial-grade truck was found to be covered under the MMWA.

11

the plaintiff could not demonstrate that a Ford F450 truck is "normally used for personal, family, or household purposes." *Id.* at *1-2 (quoting 15 U.S.C. § 2301(1)). Like the F650 truck in this case, the Court noted that F450 trucks are "marketed through Ford's Commercial Truck Division." *Id.* at *2 (internal quotation marks omitted).[8] The plaintiff's reliance on printed websites that designated Ford F450s as "consumer vehicles" did not contradict the evidence that such trucks are commercial, as opposed to consumer products. Accordingly, the court in *Frederick* granted summary judgment. The reasoning in that case is highly persuasive, serving to further buttress this Court's conclusion that summary judgment is appropriate.

Here, the Defendants offer evidence that Ford F650 trucks are commonly employed for commercial, rather than consumer uses. Eversole offers no evidence addressing how common it might be to employ these trucks for "personal, family or household" purposes. Therefore, he cannot establish a necessary element of his MMWA claim, and so the Court must grant summary judgment on Count 1.

**B.     Virginia's Motor Vehicle Warranty Enforcement Act**

Count 2 alleges a Virginia "Lemon Law" claim against Ford. Although Ford asserts several arguments in support of dispositive relief on Count 2, the Court shall discuss only the argument concerning the gross weight of the Truck, finding that it creates a bright-line rule that undisputedly disposes of this claim.

For purposes of Virginia's "lemon law," a "'Motor vehicle' means only passenger cars, *pickup or panel trucks*, motorcycles, self-propelled motorized chassis of motor homes and mopeds *as those terms are defined in* § 46.2-100." Va. Code § 59.1-207.11 (emphasis added).

---

[8] Notably, the evidence establishing the commercial nature of the truck in *Frederick* was an affidavit offered by Christopher M. Keady — the exact same "Motor Vehicle Specialist" whose affidavit is now before this Court.

By its reference to § 46.2-100, the statute defines "pickup or panel trucks" to include only vehicles "having a registered gross weight of 7,500 pounds or less." Thus, any truck with a gross weight in excess of that bright-line is not covered by the Virginia's "lemon law."

Eversole argues that the Lemon Law's incorporation of definitions from Va. Code § 46.2-100 is ambiguous. For example, he argues that while "passenger car" is defined in Va. Code § 46.2-100, the phrase "passenger cars" is not. (Pl.'s Ford Opp'n at 8.) Eversole further argues that punctuation does not adequately separate each phrase identified in § 59.1-207.11, such that they clearly relate to separate terms defined in § 46.2-100. Because each term is separated by commas or the conjunction "and," the Court perceives no such ambiguity. Moreover, the notion that a plural term cannot refer to its singular form would create an absurd result which this Court cannot in good conscience adopt. There being no ambiguity, the Court must read the statute as written, incorporating the definition of "pickup or panel trucks" contained in § 46.2-100. *See Kozmina v. Commonwealth*, 706 S.E.2d 860, 862 (Va. 2011) (citation and internal quotation marks omitted) ("When the language of a statute is unambiguous, we are bound by the plain meaning of that language").

Here, there is no disputing the registered gross weight of the Truck at issue is well in excess of 7,500 pounds. At 25,999 pounds, this is not even a close case. (Pl.'s Ford Opp'n Ex. 4, ECF No. 32-4.) Eversole does not dispute this fact in opposing summary judgment. Indeed, he has submitted the Virginia Department of Motor Vehicle Registration document that identifies both the registered gross weight of 25,999 pounds and the empty vehicle gross weight of 9,681 pounds — still well in excess of the bright-line 7,500 pound limit. Thus, the Truck at issue is clearly not within the statutory definition of those vehicles covered by Virginia's Lemon Law, and so summary judgment must be granted on Count 2.

13

C.   **Breach of Express and Implied Warranty**

In a last-ditch effort to defeat summary judgment, Eversole argues that his Complaint

also states a claim for breach of express and implied warranty under Article 2 of Virginia's

Uniform Commercial Code, Va. Code §§ 8.2-313 through 8.2-315. Neither Defendant

specifically moved for summary judgment on such a claim, presumably because no such claim

was explicitly set forth in either enumerated count. *See* Fed. R. Civ. P. 10(b) ("If doing so would

promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in

a separate count"). Recognizing this shortcoming of his Complaint, Eversole makes a passing

request for leave to amend the Complaint in his opposition brief. (Pl.'s Caterpillar Opp'n at 2;

Pl.'s Ford Opp'n at 2.)

Of course, it is improper under the Federal Rules of Civil Procedure to assert new legal

theories in briefs. Fed. R. Civ. P. 15(a)(2) ("[after the initial pleading period] a party may amend

its pleading only with the opposing party's written consent or the court's leave").[9]  Moreover,

Eversole has failed to offer any excuse for his failure to clearly assert a breach of warranty claim

in the first instance. Such inartful, disjointed pleading fails to serve the purpose of federal

pleading standards, which is to put parties on notice of the nature of the claim by way of a clear

and concise document. Fed. R. Civ. P. 8(a)(2), 10(b). As Eversole points out, "[p]leadings must

be construed so as to do justice." Fed. R. Civ. P. 8(e). But, it does not do justice to allow a party

---

[9] Numerous federal courts hold this view and the Court cites several exemplar cases
herein. *Snyder v. United States*, 263 Fed. App'x 778, 779 (11th Cir. 2008) (refusing to consider
a party's statement in a reply brief as an attempt to add a new claim); *Gilmour v. Gates,
McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her
complaint through argument in a brief opposing summary judgment"); *Speller v. Johnson*, No.
3:09cv463, 2012 U.S. Dist. LEXIS 42312, at *42-43 (E.D. Va. March 27, 2012) (requiring a
party to move to amend pleadings rather than asserting them "simply by a passing statement");
*Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) ("new legal
theories must be added by way of amended pleadings, not by arguments asserted in legal
briefs"), *aff'd*, 291 Fed. App'x 517 (4th Cir. 2008).

14

to plead his claims in a confusing fashion only to raise them in passing in opposition to summary judgment. *See Gilmour*, 382 F.3d at 1315.

Although not entirely clear, Eversole appears to be asking this Court to allow him to re-plead his case from the beginning and commence the summary judgment procedure anew (or dispose of it entirely to the Defendants' detriment). While pleadings may be amended at any time, even during trial, *see* Fed. R. Civ. P. 15(b), such belated amendments are allowed so that the pleadings may conform to evidence. However, because Eversole has offered no evidence to support his claims for breach of express or implied warranty under Virginia's UCC, such an amendment would not be appropriate here.

Even if the Court construed Eversole's Complaint to state a claim for breach of warranty — which it does not — he would still need to satisfy his evidentiary burden on summary judgment. To do so, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. At a minimum, he must offer more than a mere "scintilla of evidence" demonstrating that a breach occurred. *See Lewis*, 409 F. Supp. 2d at 704.

To establish a breach of express warranty under Virginia's UCC, Eversole must at least offer some evidence as to what express representations the Defendants have made and in what way they have breached the warranties. Va. Code § 8.2-313. Eversole has not offered a shred of evidence demonstrating the terms of any express warranty. No written warranty has been appended to the pleadings or motion papers, and no verbal express warranty has been described at all. Indeed, the only evidence on record establishes nothing more than: (1) Eversole experienced some mechanical problems with the truck; and, (2) that all repairs were made by the

Defendants. (*Compare* Eversole Dep. at 47:8-23 *with* Eversole Dep. at 144:7-17.)  In short, there has been no evidence offered to explain how, if at all, the insufficiency of the repairs rise to the level of a breach of the Defendants' duty under any existing warranty.

The same is true with regard to any claim for breach of implied warranty of merchantability.  Such a warranty arises by operation of law, so Eversole is not required to offer factual support to create the terms of such a warranty.  However, as with the express warranty, he has offered no evidence whatsoever to establish how the mechanical problems that he has experienced, or the Defendants' repairs thereto, resulted in a breach of the implied warranty.  To do so, he would need to offer some evidence establishing that the Truck is not "fit for the ordinary purposes for which" it is used.  Va. Code § 8.2-314.  Eversole cites to no such evidence in opposing either Defendants' motion for summary judgment.

In short, Eversole has failed to plead a UCC breach of warranty claim.  Moreover, had he done so, he still has not offered any evidence that a breach occurred, as is his burden at this stage of the litigation.  Thus, summary judgment is proper notwithstanding Eversole's attempt to raise UCC claims in his brief.

16

## IV. CONCLUSION

For the reasons discussed herein, the Defendants' respective motions for summary

judgment (ECF Nos. 23, 27) are GRANTED.[10]

An appropriate Order shall issue.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: April 6, 2012

---

[10] Because the Court grants summary judgment without requesting further briefing from the Defendants, neither has incurred any additional costs as a result of Plaintiff's Motion for Extension of Time.  Accordingly, the Court will not entertain a motion for attorney's fees by the Defendants related to the Plaintiff's late response.  (Order Granting Extension, March 26, 2012, ECF No. 33.)